**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| DOUGLAS A.,<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | Civil Action No. 25-17286 (GC)<br><br>**MEMORANDUM OPINION** |

**CASTNER, District Judge**

THIS MATTER comes before the Court upon Plaintiff Douglas A.'s[1] appeal from the final decision of the Commissioner of the Social Security Administration (Commissioner) denying Plaintiff's application for a "Period of Disability" and/or Disability Insurance Benefits (DIB)[2] under Title II of the Social Security Act, 42 U.S.C. § 401, *et seq*. (ECF No. 1; AR 1625-1668.)[3] After careful consideration of the entire record, including the entire Administrative Record, the Court decides this matter without oral argument in accordance with Federal Rule of Civil

[1] Plaintiff is identified by first name and last initial. *See* D.N.J. Standing Order 2021-10.

[2] DIB is also known as Social Security Disability Insurance (SSDI). *See Danielle G. v. King*, No. 22-4721, 2025 WL 354448, at *17 (D.N.J. Jan. 31, 2025); *see also* 42 U.S.C. § 423.

[3] "AR" refers to the Administrative Record, available at ECF No. 5. This Memorandum Opinion cites the internal page numbers when referring to the Administrative Record. Page numbers for all other docket citations refer to the page numbers stamped by the Court's e-filing system and not the internal pagination of the parties.

Procedure (Rule) 78(b) and Local Civil Rule 78.1(b).[4] For the reasons set forth below, and other good cause shown, the Court **AFFIRMS** the Commissioner's final decision.

# I. BACKGROUND

## A. Procedural History

Plaintiff was born on December 30, 1970, has an associate's degree, and has worked as an electrician. (AR 117, 124, 1675.) On May 1, 2015, Plaintiff completed an application for a Period of Disability and Disability Insurance Benefits (POD/DIB) under Title II of the Social Security Act. (*Id.* at 209-10.) Plaintiff alleged that, since November 24, 2014, he had a disability consisting of bilateral carpal tunnel and herniated discs in his back. (*Id.* at 145, 117, 209-10.) The Social Security Administration denied Plaintiff's application initially and on reconsideration. (*Id.* at 138-40, 145-47.) On January 7, 2016, Plaintiff filed a request for a hearing. (*Id.* at 148.)

In January 2018, an Administrative Law Judge (ALJ) held a hearing, and on February 26, 2018, the ALJ issued an unfavorable decision, finding Plaintiff not disabled from the alleged onset date through the date of the ALJ's decision. (*Id.* at 72, 83-116.) The ALJ reasoned that Plaintiff had the Residual Functional Capacity (RFC) to perform light work and that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. (*Id.* at 74, 77.) On March 26, 2018, Plaintiff requested a review of the ALJ's decision before the Appeals Council, and the Appeals Council denied this request on November 13, 2018. (*Id.* at 3, 60-61.) Plaintiff filed a complaint before this Court on January 10, 2019, pursuant to 42 U.S.C. § 405(g). (*Id.* at 860-64.) Also in January 2019, Plaintiff filed a subsequent, new claim for Title II disability benefits. (*Id.* at 1060-61.)

---

[4] Plaintiff requested oral argument if "a favorable decision cannot be reached solely on the basis of the argument contained in the brief." (ECF No. 5 at 32.) Plaintiff's request is denied.

In June 2020, the district court reversed the Commissioner's decision and remanded the case for further administrative proceedings. (*Id*. at 893-94.) Following that remand, in April 2021, the Appeals Council vacated the Commissioner's decision and remanded the case to an ALJ. (*Id.* at 898-901.) The Appeals Council also directed that Plaintiff's original claim and subsequent claim should be consolidated. (*Id.*)

A new hearing was held in December 2021, and in April 2022, the ALJ again issued Plaintiff an unfavorable decision. (*Id.* at 781-805, 806-37.) Plaintiff appealed to the district court, and on April 12, 2024, the district court entered an order reversing and remanding the decision. (*Id.* at 1746.) The Court held that the ALJ based his decision on improper evidence, did not adequately discuss some medical evidence nor explain why it was rejected, and improperly discounted opinions based on speculation. (*Id.* at 1739-41.) The Appeals Council vacated the Commissioner's decision and remanded the matter back to the ALJ. (*Id.* at 1747-49.) The ALJ held a hearing in November 2024 and an additional hearing in July 2025. (*Id.* at 1669-95, 1696-1722.) In September 2025, the ALJ again issued an unfavorable decision. (*Id.* at 1625.) Plaintiff appeals that decision. (ECF No. 1.)

**B. The ALJ's Decision**

In the most recent ALJ opinion, the ALJ used the requisite five-step sequential evaluation process to determine that Plaintiff is not disabled. (AR 1629-30.) *See also* 20 C.F.R. § 404.1520(a)(a)(4) (describing the five-step process).

At step one, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act on December 31, 2019 and "did not engage in substantial gainful activity during the period from his alleged onset date of November 24, 2014 through his date last insured of December 31, 2019." (AR 1630-31.)

At step two, the ALJ found that "[t]hrough the date last insured, [Plaintiff] had the following severe impairments: degenerative disc disease in the lumbar spine with radiculopathy, carpal tunnel syndrome in the right wrist, status post left wrist fusion surgery, obesity, depressive disorder and anxiety disorder." (*Id.* at 1631.) The ALJ noted that these medically determinable impairments "significantly limit the ability to perform basic work activities," and thus are severe. (*Id.*) The ALJ found that Plaintiff's other impairments, including hypertension, gastroesophageal reflux disease, restless legs syndrome, sleep apnea, hyperlipidemia and diabetes mellitus, are not severe because they are "being managed medically, and should be amenable to proper control by adherence to recommended medical management and medication compliance." (*Id.*)

At step three, the ALJ found that "[t]hrough the date last insured, [Plaintiff] did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments" in the applicable regulation. (*Id.*) *See also* 20 CFR § 404, Subpart P, Appendix 1. When assessing Plaintiff's physical impairments, the ALJ specifically considered listings 1.15 (disorders of the skeletal spine resulting in compromise of a nerve root(s)), 1.16 (lumbar spinal stenosis resulting in compromise of the cauda equine), and 1.18 (abnormality of a major joint in any extremity) in reaching this decision. (AR 1631-33.) 20 CFR § 404, Subpart P, Appendix 1.

The ALJ also considered the severity of Plaintiff's mental impairments. The ALJ found that Plaintiff had moderate limitations in understanding, remembering, or applying information; mild limitations in interacting with others; moderate limitations in ability to concentrate, persist or maintain pace; and mild limitations in the ability to adapt and manage himself. (AR 1632-33.)

At step four, the ALJ conducted an RFC assessment and concluded that,

> through the date last insured, [Plaintiff] had the residual functional capacity to perform light work as defined in 20

> CFR 404.1567(b) except [Plaintiff] could never climb ropes, ladders or scaffolds. [He] could never be exposed to unprotected heights or hazardous machinery. [He] could occasionally climb stairs and ramps. [He] could never crawl. [He] could occasionally kneel, stoop and crouch. [He] could frequently balance. [He] was limited to frequent fingering and handling. [He] was able to do only simple and routine tasks.

(AR 1634.) To arrive at this conclusion, the ALJ stated that he "considered all [of Plaintiff's] symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." (*Id.* (citing 20 C.F.R. §§ 404.1529 and Social Security Ruling (SSR) 16-3p (Evaluation of Symptoms in Disability Claims), 2017 WL 5180304 (Oct. 25, 2017)).) The ALJ also considered "opinion evidence in accordance with the requirements of 20 CFR 404.1527." (*Id.*)

In considering Plaintiff's symptoms, the ALJ stated that he must follow a two-step process. (*Id.*) First, the ALJ stated that he must determine whether "there is an underlying medically determinable physical or mental impairment . . . that could reasonably be expected to produce the claimant's pain or other symptoms." (*Id.*) Second, if there is such an impairment, the ALJ stated that he would then evaluate "the intensity, persistence, and limiting effects" of the symptoms "to determine the extent to which they limit the claimant's work-related activities." (*Id.*) In making this evaluation, if Plaintiff's statements about intensity, persistence, and limiting effects "are not substantiated by objective medical evidence," the ALJ stated he must consider "other evidence in the record to determine if the claimant's symptoms limit the ability to do work-related activities." (*Id.*)

Applying these standards, the ALJ reviewed Plaintiff's function reports and testimony to find step one satisfied. (*Id.* at 1634-35.) The ALJ then proceeded to step two and found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms

are not entirely consistent with the medical evidence and other evidence in the record[.]" (*Id.* at 1635.)

The ALJ then discussed the role that the medical evidence played in his RFC assessment, concluding that "the objective medical evidence . . . shows mostly stable conditions and conservative management of the symptoms that allows the capacity to perform a limited range of light work as set forth in the residual functional capacity." (*Id.* at 1635-1654.) The ALJ also found that Plaintiff's "morbid obesity in conjunction with his lumbar spine impairment has caused further limitations . . . consistent with the limitations as outlined in the residual functional capacity." (*Id.* at 1648.)

The ALJ then considered the opinions of medical experts. (*Id.* at 1649-53.) The ALJ gave the opinion of non-examining state agency medical consultant Dr. Esther Tomor "some weight" because she is a "medical professional who has knowledge of the Social Security Disability Program and its evidentiary requirements[,]" and her opinion is "somewhat consistent with the record as a whole." (*Id.* at 1649.) The ALJ gave the opinions of other non-examining state agency medical consultants who reviewed the record, Dr. Nancy Simpkins and Dr. Toros Shahinian, "some weight" because Dr. Simpkins is familiar with the evidentiary requirements of the Social Security Disability Program, and Dr. Shahinian "wholly concurred" with Dr. Simpkins's opinion. (*Id.* at 1649-50.) Dr. Simpkins's opinion is also "somewhat consistent with the record as a whole." (*Id.* at 1649.) The ALJ gave "little consideration" to the opinions of Dr. Michael Bohnhert and Dr. Jesus Soto, non-examining state agency mental health consultants, because although their opinions are "consistent with the record as a whole[,]" they did not "have the opportunity to examine the claimant or review the evidence received after their file review was complete." (*Id.* at 1650.) The ALJ gave "limited weight" to the opinion of Dr. Jagdip Desai, Plaintiff's treating physician,

because it "is not consistent with the record as a whole." (*Id.* at 592, 1651-52; ECF No. 5 at 15.) The ALJ gave "little weight" to the opinion of Dr. Steven Beldner because his opinion is "an administrative finding dispositive of disability," and such a finding is "reserved to the Commissioner of the Social Security Administration." (AR 1652.) Lastly, the ALJ gave "limited weight" to the opinion of Dr. Russell Gross, Plaintiff's primary care physician, because it is "mostly not consistent with the record as a whole." (*Id.* at 1652-53.)

Finally, at step five, the ALJ found that, "considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed." (*Id.* at 1654 (citing 20 C.F.R. §§ 404.1569, 404.1569a).) A vocational expert testified that Plaintiff could perform the requirements of jobs such as storage facility rental clerk, parking lot cashier, and photocopying machine operator. (*Id.* at 1654-55.) The ALJ determined that the vocational expert's testimony was consistent with the regulations. (*Id.* at 1655.) Therefore, the ALJ concluded that a finding of "not disabled" is appropriate. (*Id.*)

## II. LEGAL STANDARD

### A. Standard of Review

The Court has jurisdiction to review the Commissioner's decision under 42 U.S.C. § 405(g). In conducting this review, the Court is "not permitted to re-weigh the evidence or impose [its] own factual determinations." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011) (citation omitted). Instead, the Court must "scrutinize the record as a whole to determine whether the conclusions reached are rational" and "supported by substantial evidence." *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978) (citation omitted).

Substantial evidence is "defined as 'more than a mere scintilla'; it means 'such relevant evidence as a reasonable mind might accept as adequate.'" *Hagans v. Comm'r of Soc. Sec.*, 694

F.3d 287, 292 (3d Cir. 2012) (quoting *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999)). Evidence is not substantial "if it is overwhelmed by other evidence—particularly certain types of evidence (e.g., [evidence] offered by treating physicians)—or if it really constitutes not evidence but mere conclusion." *Nazario v. Comm'r Soc. Sec.*, 794 F. App'x 204, 209 (3d Cir. 2019) (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)). "Where the ALJ's findings of fact are supported by substantial evidence," the Court is "bound by those findings, even if [it] would have decided the factual inquiry differently." *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) (citation omitted); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Legal issues, in contrast, are subject to a plenary or de novo review. *See Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 208 n.10 (3d Cir. 2019) ("We exercise plenary review over legal conclusions reached by the Commissioner . . . ." (quoting *Chandler*, 667 F.3d at 359)).

### B. Determining Disability

To be eligible for DIB under the Social Security Act, a claimant must establish that they are unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d). The individual's impairment must be severe to the point that the individual cannot engage in his or her previous work or in "any other kind of substantial gainful work which exists in the national economy," *i.e.*, work that exists in significant numbers either in the region where the individual lives or in several regions of the country. 42 U.S.C. § 423(d)(2); *Plummer*, 186 F.3d at 427-28. A physical or mental impairment is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). Disability determinations are made

individually "based on evidence adduced at a hearing." *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000) (citation omitted).

### C. Sequential Evaluation

The Social Security Administration has developed a sequential, five-step process for evaluating disability claims. The process considers whether the claimant:

> (1) is engaged in substantial gainful activity; (2) suffers from an impairment or combination of impairments that is "severe"; (3) suffers from an impairment or combination of impairments that meets or equals a listed impairment; (4) is able to perform his or her past relevant work; and (5) is able to perform work existing in significant numbers in the national economy.

*McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004) (citing 20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f)). "The evaluation will continue through each step unless it can be determined at any point that the claimant is or is not disabled." *Rios v. Comm'r of Soc. Sec.*, 444 F. App'x 532, 534 (3d Cir. 2011) (citing 20 C.F.R. § 404.1520(a)(4)). The claimant bears the ultimate burden of proof at the first four steps, at which point the burden shifts to the Commissioner at the fifth step. *See Hess*, 931 F.3d at 201 ("The burden of proof is on the claimant at all steps except step five, where the burden is on the Commissioner of Social Security.")

## III. DISCUSSION

Plaintiff asserts that the ALJ's findings were not supported by substantial evidence, and Plaintiff asks this Court to remand the case for a payment of benefits. (ECF No. 5 at 10, 31.) Plaintiff contends that this remedy is "the only appropriate action in this case" because there is no remaining factual dispute, and the Commissioner has failed to provide a reasonable explanation for his findings regarding Plaintiff's functional limitations. (*Id.* at 31-32.) Plaintiff asserts three reasons why the Commissioner's decision should be reversed: (1) the ALJ's finding as to residual

functional capacity was not supported by substantial evidence; (2) the ALJ's finding as to the ability to engage in alternative work activity at step five was not supported by substantial evidence; and (3) the ALJ's refusal to recuse himself on the basis of bias was an abuse of discretion. (*Id.* at 10.)

### A. Residual Functional Capacity

First, Plaintiff argues that the ALJ's finding of Plaintiff's RFC was not supported by substantial evidence and "is contrary to any reasonable view of that evidence." (*Id.* at 13.) Specifically, Plaintiff avers that the evidence shows that Plaintiff has several wrist and back impairments, and that despite acknowledging these impairments in his decision, the ALJ's determination of Plaintiff's RFC does not account for these impairments. (*Id.* at 14.) Plaintiff also argues that the ALJ did not adequately consider the impact of Plaintiff's obesity on his work capacity. (*Id.* at 14-15.) The Commissioner responds that the ALJ's RFC assessment was supported by substantial evidence, including Plaintiff's statements—such as his reports that he can prepare his own meals, drive, pay bills, and count change—as well as clinical observations, such as Plaintiff's ability to maintain a normal gait. (ECF No. 7 at 7-8.) In response to Plaintiff's arguments about the ALJ's consideration of obesity, the Commissioner contends that the ALJ considered Plaintiff's obesity at several points in his analysis including in his RFC decision. (*Id.* at 9-11.)

A claimant's RFC is the most that the claimant can do despite their limitations. 20 C.F.R. § 404.1545. When conducting an RFC assessment, an ALJ is not required to provide a "written analysis about how [the ALJ] considered each piece of evidence." *Joseph P. v. Comm'r Soc. Sec.*, Civ. No. 21-13524, 2023 WL 1929945, at *5 (D.N.J. Feb. 10, 2023) (alteration in original) (quoting Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5858 (Jan.

18, 2017)). Instead, the regulations reflect a "reasonable articulation standard" in which the "decision need only 'allow a subsequent reviewer . . . to trace the path of an adjudicator's reasoning.'" *Id.* (quoting 82 Fed. Reg. at 5858). An ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004).

Moreover, for applications filed before March 27, 2017[5], as here, medical opinions are evaluated according to 20 C.F.R. § 404.1527, which states that the opinions of treating physicians are given controlling weight when they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and are "not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2); *Nichols v. Comm'r of Soc. Sec.*, 404 F. App'x 701, 704 (3d Cir. 2010) ("[A]n ALJ may discount the opinion of a treating physician when that opinion is inconsistent with other substantial evidence in the record" (citing 20 C.F.R. § 416.927(d)(2))). However, a treating physician's opinion "does not bind the ALJ on the issue of functional capacity." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356 (3d Cir. 2011) (quoting *Brown v. Astrue*, 649 F.3d 193, 197 n.2 (3d Cir. 2011)). The opinions of state agents "merit significant consideration as well" because they are "experts in the Social Security disability programs." *Id.* (citing SSR 96-6p (Policy Interpretation Ruling Titles II and XVI: Consideration of Admin. Findings of Fact by State Agency Med. and Psych. Consultants and Other Program Physicians and Psychs. at the Admin. L. Judge and Appeals Council Levels of Admin. Rev.; Med. Equivalence), 1996 WL 374180 (July 2, 1996)). When rejecting evidence that would have led to a contrary decision, "the

---

[5] The Court notes that Plaintiff filed two applications, the first in 2015 and the second in 2019, which were consolidated. (AR 898-901.) The Court follows the standard for applications filed before March 27, 2017. 20 C.F.R. § 404.1527. Both parties rely on this standard, which is more favorable to Plaintiff. (ECF No. 5 at 18; ECF No. 7 at 11.) *Compare* 20 C.F.R. § 404.1527, *with* 20 C.F.R. § 404.1520c.

ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981).

Here, the ALJ adequately explained his reasoning in support of his conclusion that Plaintiff had the RFC to "perform work at the demands of the light exertional level" and to "do[] only simple and routine tasks." (AR 1653.) The ALJ noted that the record shows that from Plaintiff's alleged onset date through his date last insured, Plaintiff "could lift/carry 20 pounds occasionally and 10 pounds frequently as well as sit for 6 hours and stand/walk for 6 hours in an eight-hour workday." (*Id.* at 1636.) Additionally, the ALJ observed that Plaintiff testified that he is "able to dress himself, handle his personal care and light grocery shop[ping], . . . drive a car and ride in a car." (*Id.* at 1649.) The ALJ also noted that several of the medical opinions indicate that the symptoms from Plaintiff's severe physical and mental impairments that cause limitations were "well controlled and tolerable through prescribed treatment methods[.]" (*Id.* at 1649-53.) When evaluating the opinion of Plaintiff's treating physician, Dr. Desai, the ALJ reviewed the record, determined that his opinion "is not consistent with the record as a whole," and thus, assigned it "limited weight." (*Id.* at 1651; ECF No. 5 at 15.) Furthermore, the ALJ specifically considered Plaintiff's obesity in the RFC determination, stating that Plaintiff's "morbid obesity in conjunction with his lumbar spine impairment has caused further limitations." (AR 1648.) *See Porter v. Colvin*, Civ. No. 14-4004, 2015 WL 1969086, at *16 (D.N.J. Apr. 30, 2015) (citing *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 504-05 (3d. Cir. 2009) ("As long as the ALJ considers the impact of obesity along with the impact of Plaintiff's other impairments, the ALJ has properly considered obesity.")

The ALJ's explanation is sufficient to allow this Court to "trace the path" of the ALJ's reasoning. The ALJ considered the opinions of eight medical experts, including Plaintiff's treating

physicians, and noted that five of the eight medical experts opined that Plaintiff was capable of light or sedentary work with noted limitations. (AR 1649-53.) The ALJ also considered Plaintiff's own testimony as to his activities of daily living. (*Id.*) In addition to explaining the findings of each medical expert, the ALJ discussed the weight afforded to each expert's opinion, and why that amount of weight was appropriate. (*Id.*) The ALJ's RFC determination is therefore "supported by substantial evidence."

**B. Ability to Engage in Alternative Work Activity**

Plaintiff argues that the ALJ's finding as to the ability to engage in alternative work activity at step five was not supported by substantial evidence because the ALJ relied on vocational testimony that was based on an RFC finding that is not consistent with the evidence. (ECF No. 5 at 21, 23.) Plaintiff specifically argues that the questions the ALJ asked the vocational experts did not accurately portray the Plaintiff's limitations and contends that "if [Plaintiff]'s residual functional capacity found by the ALJ is not supported by substantial evidence, then it is axiomatic that the testimony of the vocational witness is irrelevant." (*Id.* at 21.) By contrast, the Commissioner argues that the ALJ is only required to ask the vocational experts about limitations that are supported by the record. (ECF No. 7 at 13.) Therefore, the Commissioner submits that the ALJ's finding that the opinions of some of Plaintiff's doctors did not accurately reflect Plaintiff's RFC meant that the ALJ was not obligated to include those opinions in questions to vocational experts. (*Id.* at 13-14.)

"Testimony of vocational experts in disability determination proceedings typically includes, and often centers upon, one or more hypothetical questions posed by the ALJ to the vocational expert." *Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir. 1984). "Usually, the ALJ will ask whether a hypothetical claimant with the same physical and mental impairments as the

claimant can perform certain jobs that exist in the national economy." *Zirnsak v. Colvin*, 777 F.3d 607, 614 (3d Cir. 2014). The hypothetical questions must "'accurately portray' any impairments of the claimant." *Id.* (quoting *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005). To ensure the impairments are accurately portrayed, the ALJ must include all of the claimant's "credibly established limitations" in their hypothetical questions. *Rutherford*, 399 F.3d at 554 (citing *Plummer*, 186 F.3d at 431 (emphasis removed)). When a limitation is "supported by medical evidence, but is opposed by other evidence in the record, the ALJ has discretion to choose whether to include that limitation in the hypothetical." *Zirnsak*, 777 F.3d at 615 (citing *Rutherford*, 399 F.3d at 554).

Here, the ALJ determined that the expert opinion of Dr. Desai was inconsistent with the record as a whole. (AR 1651.) Thus, it was within the ALJ's discretion to find that the limitations expressed by Dr. Desai were not credibly established and omit them from the hypothetical questioning of the vocational witness. *See Zirnsak*, 777 F.3d at 615. Additionally, as previously stated, the ALJ's determination of Plaintiff's RFC is supported by substantial evidence. Accordingly, the Court finds that the ALJ's questioning of the vocational witness, based on Plaintiff's age, education, work experience, and the RFC that the ALJ determined, accurately portrayed Plaintiff's credibly established limitations. The ALJ's finding as to Plaintiff's ability to engage in alternative work activity at step five was supported by substantial evidence.

**C. Recusal on the Basis of Bias**

Lastly, Plaintiff argues that the ALJ's refusal to recuse himself was an abuse of discretion. (ECF No. 5 at 23.) Plaintiff contends that the ALJ has shown "a strong and pervasive bias against Social Security claimants." (*Id.*) In support of his claim, Plaintiff attached data from 2020 to 2025, which Plaintiff claims demonstrates that this ALJ is less likely to find in favor of the claimant than

other ALJs in Newark and nationally. (ECF Nos. 5-5, 5-6, 5-7, 5-8, 5-9.) The Commissioner responds that Plaintiff's use of statistics both fails to meet the United States Supreme Court's standard for proving bias and is an approach that has been rejected by several appellate courts. (ECF No. 7 at 15-16.)

Social Security claimants are entitled to procedural due process. *See Richardson v. Perales*, 402 U.S. 389, 401-02 (1971). "[D]ue process requires that any hearing afforded [a Social Security disability] claimant be full and fair." *Bordes v. Comm'r of Soc. Sec.*, 235 F. App'x 853, 857 (3d Cir. 2007); *see also Hess v. Sec'y of Health, Ed. & Welfare*, 497 F.2d 837, 841 (3d Cir. 1974). An ALJ's bias can amount to a violation of Plaintiff's due process rights in certain circumstances. *See, e.g.*, *Ventura v. Shalala*, 55 F.3d 900, 905 (3d Cir. 1995) (finding that the ALJ's "offensive and unprofessional conduct" deprived the claimant of a full and fair hearing and noting that "rudeness, impatience, or outright bias cannot be tolerated").

"Because administrative law judges serve in a quasi-judicial capacity, they are required to be neutral arbiters throughout the administrative process." *James R. v. Kijakazi*, Civ. No. 22-05030, 2023 WL 6389097, at *4 (D.N.J. Sep. 30, 2023); *see also Marshall v. Jerrico, Inc.*, 446 U.S. 238, 242 (1980) ("The Due Process Clause entitles a person to an impartial and disinterested tribunal in both civil and criminal cases. This requirement of neutrality in adjudicative proceedings safeguards the two central concerns of procedural due process."). Administrative law judges are presumed to be unbiased, but this presumption can be rebutted "by a showing of conflict of interest or some other specific reason for disqualification." *Schweiker v. McClure*, 456 U.S. 188, 195 (1982). "However, the threshold required for finding an ALJ biased is very high." *Shanta B. v. Comm'r of Soc. Sec.*, Civ. No. 23-4232, 2024 WL 3534338, at *7 (D.N.J. July 25, 2024). "An ALJ [] abuses his or her discretion if the evidence in the record shows that the ALJ failed to recuse

himself or herself from a case in which he or she was prejudiced or partial with respect to a particular claim or claimant, or had an interest in the matter pending for decision." SSR 13-1P (Titles II and XVI: Agency Processes for Addressing Allegations of Unfairness, Prejudice, Partiality, Bias, Misconduct, or Discrimination by Administrative Law Judges (ALJs)), 2013 WL 633939 (Jan. 29, 2013). The burden of establishing disqualification lies with the party seeking it. *Id.*

Here, Plaintiff has not shown that the ALJ deprived him of a full and fair hearing, that the ALJ was prejudiced or partial, or that the ALJ had an interest in the matter. *See Bordes*, 235 F. App'x at 857; SSR 13-1P. Plaintiff concedes that the ALJ "was not rude or impatient or acted in any way to suggest any sort of bias or animosity" toward Plaintiff. (ECF No. 5 at 25.) Plaintiff relies on data that compares the ALJ's decision making with other ALJs in Newark and nationally; however, these statistics are not sufficient for the Court to find bias. *See Kirlew v. Att'y Gen. of U.S.*, 267 F. App'x 125, 128 (3d Cir. 2008) ("[W]e cannot base a finding of bias merely on repeated adverse rulings."); *Johnson v. Comm'r of Soc. Sec.*, Civ. No. 08-4901, 2009 WL 4666933, at *4 (D.N.J. Dec. 3, 2009), aff'd, 398 F. App'x 727 (3d Cir. 2010) ("[A]n ALJ's impartiality should not be judged by result or reputation or by statistics of how that judge has previously ruled." (citing *Mirabal v. Astrue*, Civ. No. 08-01079, 2009 LEXIS 129703, at *21 (D.N.J. July 14, 2009))); *Shanta B.,* 2024 WL 3534338, at *7 (finding no ALJ bias where "[p]laintiff's only assertions of bias against the ALJ stem from his unfavorable decision which [p]laintiff challenges on appeal and his overall approval statistics, rather than any specific instances of biased conduct or language against [p]laintiff or [p]laintiff's counsel."). Therefore, the Court finds that Plaintiff has not alleged a cognizable claim of bias, and accordingly, the ALJ's decision not to recuse himself from

the case was not an abuse of discretion.

## IV. CONCLUSION

For the foregoing reasons, and other good cause shown, the Commissioner's final decision is **AFFIRMED**. An appropriate Order follows.

Dated: November 20th, 2026

*Georgette Castner*

**GEORGETTE CASTNER**
**UNITED STATES DISTRICT JUDGE**